# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

GEORGE J. COLEY and CALGARY MACKENZIE,

    Plaintiffs,

    v.

FREEDOM TRAILERS, LLC, et al.,

    Defendants.

5:25-cv-005

## ORDER

Before the Court are two motions to dismiss: the first filed collectively by Defendants Willacoochee Police Department, Officer Christine McCleod, and Chief Francisco Sanchez (collectively, the "Willacoochee Defendants"), dkt. no. 8, and the second filed collectively by Defendant Freedom Trailers, LLC and Harold Baxley (collectively, the "Freedom Trailers Defendants"), dkt. no. 14. The motions have been fully briefed and are ripe for review. Dkt. Nos. 8, 14, 16, 17. For the reasons stated below, both motions are **GRANTED.**

**BACKGROUND**[1]

This case centers around the location of two trailers. Plaintiffs contend that on July 31, 2022, Plaintiff George Coley, a truck driver employed by CM Truck and Trailer ("CM"), was "tasked with picking up a load" for CM from Freedom Trailers, a business in Willacoochee, Georgia. Dkt. No. 6 ¶¶ 13–15. Mr. Coley loaded two trailers and proceeded to a predetermined destination in Chichester, New Hampshire, per CM's instructions. Id. ¶ 14.

On August 10, 2022, Freedom Trailers received an email from a customer with a complaint: the customer, Southern Lawn & Equipment ("SLE"), had not received an expected load of trailers. Id. ¶ 15. After a brief investigation, Freedom Trailers purportedly located footage of Mr. Coley loading the two trailers intended for SLE. Id. Two days later, on August 12, 2022, Freedom Trailers allegedly contacted the Willacoochee Police Department and reported that Mr. Coley had taken the trailers intended for SLE. Id. ¶ 16. Willacoochee Assistant Police Chief Sanchez then allegedly spoke with an employee of Freedom Trailers who told Chief Sanchez that she had tried to contact Mr. Coley and CM but had received no response. Id. ¶ 17.

---

[1] In the motion to dismiss analysis, the Court must "accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff." Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

Later that day, Chief Sanchez talked to a partner of CM, Joe Allen, and allegedly informed Mr. Allen that Mr. Coley had taken the two trailers from Freedom Trailers. Id. ¶ 18. Mr. Allen told Chief Sanchez that because he was out of town, he would have another person "check the lot," presumably CM's lot, for the missing trailers and that Mr. Allen would then report back to Chief Sanchez if the trailers were found on the lot. Id. Four days went by. Id. ¶ 19.

On August 16, 2022, Willacoochee police officer McCleod attempted to call Plaintiff Calgary Mackenzie, an owner of CM, but presumably failed to reach him. Id. ¶¶ 19, 21. Officer McCleod then called Mr. Coley and discussed the circumstances of the trailers over the phone. Id. ¶ 19. Mr. Coley reportedly informed Officer McCleod that the trailers had been delivered to CM's lot in New Hampshire. Id. In that call, Officer McCleod informed Mr. Coley that she needed to speak with his boss because Freedom Trailers was planning to press charges. Id.

Later that afternoon, Mr. Mackenzie called Officer McCleod to discuss the investigation. Id. At some point during this conversation, Mr. Mackenzie purportedly informed Officer McCleod that a Freedom Trailer's employee had told Mr. Coley that CM could pay Freedom Trailers for the trailers in lieu of CM's shipping the trailers back. Id.

3

On August 17, 2022, Mr. Mackenzie then ostensibly sent $16,070.00 to Freedom Trailers for the missing trailers. Id. ¶ 20. A Freedom Trailers employee then allegedly informed Mr. Mackenzie that Freedom Trailers would remit the funds back to CM, and CM should instead send the funds to Freedom Trailers' customer, SLE. Id. On August 18, CM then allegedly sent the funds to SLE. Id. ¶ 21.

That same day, on August 18, 2022, Chief Sanchez spoke first with Mr. Coley by phone, then met with the owner of Freedom Trailers, Mr. Baxley. Id. ¶ 22. At that meeting, Mr. Baxley purportedly gave Chief Sanchez a walk-through of Freedom Trailers' plant and the standard process for identifying and picking up trailers. Id. At this meeting, Mr. Baxley allegedly told Chief Sanchez that "a mistake could not have been made," and Mr. Baxley allegedly wanted to press charges. Id.

The following day, August 19, 2022, Officer McCleod obtained arrest warrants for Mr. Coley and Mr. Mackenzie for "Felony, Theft by Taking" under O.C.G.A. Section 16-8-2. Id. ¶ 23; Dkt. No. 8-1. Each warrant alleged that Mr. Coley and Mr. Mackenzie

> . . . did willingly and knowingly [] take two white (cargo trailers vin #5WKBE2622P1078695, vin # 5WKBE2023P1078696), with a value of $16,076, property of (Freedom Cargo Trailers) with the intention of depriving said owner of said property[] between the dates of 07/31/2022 at 04:00 PM and 08/12/2022 at 10:26 AM, in Atkinson County, Georgia; the place of occurrence of said offense being 774 WEST MARSHALL AVENUE WILLACOOCHEE GA 31650 and against the laws of the State of Georgia.

4

Dkt. No. 8-1 at 1, 2.

Days after the warrants were issued, Mr. Mackenzie reportedly received a letter from SLE, dated August 22, 2022, which stated that the trailers were "paid in full," that the matter had been "settled," and that SLE was not pursuing any charges of theft against Mr. Coley, or Mr. Mackenzie. Dkt. No. 6 ¶ 21. Mr. Coley turned himself in on September 7, 2022, and Mr. Mackenzie never turned himself in. Id. ¶ 24. The charges against Mr. Coley and Mr. Mackenzie were both later dismissed by the Superior Court of Atkinson County, Georgia. Id. ¶ 25.

**PROCEDURAL HISTORY**

Plaintiffs Coley and Mackenzie initially filed their complaint in this Court on January 20, 2025, dkt. no. 1, and then filed an amended complaint on January 22, 2025, dkt. no. 6. In the amended complaint, Plaintiffs assert the following claims: a violation of the Fourth Amendment by Mr. Baxley and Freedom Trailers (Count One), a violation of the Fourth Amendment by the Willacoochee Defendants (Count Two), a violation of the Georgia Constitution (Count Three), false arrest under Georgia law (Count Four), and malicious prosecution under Georgia law (Count Five). Dkt. No. 6 ¶¶ 26–37. Counts Three through Five appear to be directed at all Defendants. Id. ¶¶ 31–37.

The Willacoochee Defendants moved to dismiss the amended complaint on April 4, 2025, dkt. no. 8, and Freedom Trailers and

5

Mr. Baxley collectively moved to dismiss on April 11, 2025, dkt. no. 14. Plaintiffs responded in opposition to both motions. Dkt. Nos. 16, 17.

## LEGAL AUTHORITY

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and "construe them in the light most favorable" to the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016) (citations omitted). The Court should not accept allegations as

6

true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678-79 (citing Twombly, 550 U.S. at 555); Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678).

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alterations adopted).

## DISCUSSION

## I.   Plaintiffs' Constitutional Claims

In Counts One and Two, Plaintiffs bring Constitutional claims against Defendants pursuant to 42 U.S.C. § 1983. Dkt. No. 6 ¶¶ 2, 26–30. Though not a source of substantive rights, § 1983 creates a private right of action to redress violations of rights conferred by the Constitution or federal statutes. Baker v. McCollan, 443

U.S. 137, 144 n.3 (1979). Specifically, § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42. U.S.C. § 1983.

To state any claim under § 1983, a plaintiff must allege that "(1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (citations omitted).

### A. Count One: Plaintiffs' Claims Against the Freedom Trailers Defendants

Count One of the amended complaint alleges that the Freedom Trailers Defendants "initiated and pushed for Mr. Coley and Mr. Mackenzie to be unreasonably arrested, detained, and prosecuted without probable cause in violation of the Fourth Amendment's prohibition against unreasonable seizures." Dkt. No. 6 ¶ 26. Such a claim could be a viable constitutional tort under § 1983. Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003) (recognizing malicious prosecution as a potential violation of the Fourth Amendment); Carter v. Gore, 557 F. App'x 904, 906 (11th Cir. 2014) ("The issuance of a warrant—even an invalid one as [plaintiff]

alleges was issued here—constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest." (citations omitted)). It is the second prong of the § 1983 pleading requirements—action under color of state law—that proves fatal for Plaintiffs' claims against the Freedom Trailers Defendants. See Richardson, 598 F.3d at 737.

Plaintiffs argue that the amended complaint sufficiently alleges that the Freedom Trailers Defendants were acting under color of state law because Defendants were "willful participants in joint activity with the State" as shown by the statements allegedly made by Mr. Baxley to law enforcement concerning the missing trailers, including his alleged insistence on pressing charges. Dkt. No. 17 at 3. The Freedom Trailers Defendants argue that as Mr. Baxley is a private citizen and Freedom Trailers, LLC is a corporation, neither could be considered a "government actor" for purposes of a Fourth Amendment violation. Dkt. No. 14 at 5.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)) (other citations omitted). A

9

private party may be found to have acted under color of state law in a § 1983 action when any one of three tests are satisfied:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test");

> (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or

> (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test").

Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001) (quoting NBC, Inc. v. Commc'ns Workers of Am., 860 F.2d 1022, 1026–27 (11th Cir. 1988)).

Plaintiffs do not allege that either Mr. Baxley or Freedom Tailers were coerced by the state, nor do Plaintiffs appear to allege that the Freedom Trailers Defendants were performing a public function historically within the state's dominion—thus making the first two tests inapplicable. Instead, Plaintiffs argue that the Freedom Trailers Defendants were sufficiently "in concert" with law enforcement to satisfy the third of the state-action tests, the "nexus/joint action" test. Dkt. No. 17 at 3. Specifically, the amended complaint alleges that Mr. Baxley and employees of Freedom Trailers contacted law enforcement about the missing trailers and decided to press charges, despite the "actual owner" of the trailers, SLE, not wanting to prosecute, and knowing

that CM agreed to pay for the trailers prior to the issuance of the warrants. Dkt. No. 6 ¶¶ 16, 17, 19, 20, 22, 26.

Typically, when an individual provides information to law enforcement as a private citizen, such assistance is not considered an action "under color of state law." See, e.g., King v. King, 342 F. Supp. 3d 1364, 1368, 1373 (M.D. Ga. 2018) (captain within county police department was not acting under color of state law when he filed an application for a criminal warrant, "a process that was available to all private individuals"). This case is similar to Watkins v. Dubreuil, where the Eleventh Circuit found that Walmart and a store manager were not acting under color of state law for purposes of a § 1983 claim. 820 F. App'x 940, 943–44 (11th Cir. 2020). In Watkins, the allegation that the manager may have made false statements to the police was not sufficient to allege that the manager acted in concert with the police, and nothing in the complaint plausibly suggested 1) that the deputy receiving the statements knew that the statements were false or 2) that the deputy and the manager reached an understanding to deprive the plaintiff of his constitutional rights. Id.

Here, while Plaintiffs allege that the Freedom Trailers Defendants worked "in a concerted effort with the Willacoochee Police Department . . . to prosecute a matter that resolved itself with payment to the rightful owner," dkt. no. 6 ¶ 26, they do not allege that the police officers knew of any alleged false statement

11

or omission made by the Freedom Trailers Defendants. Rather, Plaintiffs accuse the officers of "relying uncritically" on statements made by Mr. Baxley and for agreeing with Mr. Baxley that "a mistake could not have been made" "without further investigating" the claims before swearing out warrants for Plaintiffs. Dkt. No. 6 ¶ 28.

Without plausible allegations that the Freedom Trailers Defendants were in a conspiracy with state actors to deprive Plaintiffs of their constitutional rights, the amended complaint fails to allege that the Freedom Trailers Defendants were acting under color of state law, and consequently, the Freedom Trails Defendants are not subject to suit under § 1983. Cf. Driessen v. Univ. of Miami Sch. of L. Child. & Youth L. Clinic, 835 F. App'x 489, 491 (11th Cir. 2020) (citing Rayburn, 241 F.3d at 1347) (affirming the lower court's dismissal of a § 1983 suit against a private actor because the court found that the plaintiff did not allege sufficient facts to establish that any one of the tests could be satisfied).

Therefore, the Freedom Trailers Defendants' motion to dismiss, dkt. no. 14, is **GRANTED** as to Count One, and this claim is **DISMISSED**.

**B. Count Two: Plaintiffs' Constitutional Claims against the Willacoochee Defendants**

In Count Two, Plaintiffs allege that the Willacoochee Police Department, Chief Sanchez, and Officer McCleod caused Plaintiff Coley to be "unreasonably arrested, detained, and prosecuted without probable cause" in violation of the Fourth Amendment. Dkt. No. 6 ¶ 28. Because Plaintiffs' § 1983 claim is analyzed differently regarding the Willacoochee Police Department as opposed to the individual Willacoochee Defendants, each group is considered separately below.

**1. The Willacoochee Police Department**

The Willacoochee Defendants argue that the Willacoochee Police Department is not an entity subject to suit under § 1983. Dkt. No. 8 at 4–5. For an organization that is not an individual or a corporation, the capacity to sue or be sued is determined by the law of the state in which the district court is held. Fed. R. Civ. P. 17(b)(3). Other courts have repeatedly held that, under Georgia law, a city police department is not a party subject to suit under § 1983. See, e.g., Lovelace v. Dekalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir. 2005) ("We have observed that '[s]heriff's departments and police departments are not usually considered legal entities subject to suit....'" (quoting Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992))); Shelby v. City of Atlanta, 578 F. Supp. 1368, 1370 (N.D. Ga. 1984) (finding that

because the police department was "merely the vehicle through which the City government fulfills its policing functions," the police department was not a proper party defendant in a § 1983 action). Plaintiffs concede that the Willacoochee Police Department is not a proper party in this action. See Dkt. No. 16 at 8. Plaintiffs contend, however, that this is a "technical pleading issue that can be cured by substituting the proper party." Dkt. No. 16 at 8.

Even if Plaintiffs had properly brought a claim against the City of Willacoochee, rather than Willacoochee Police Department, however, their claims against that defendant would still fail. "A municipality may not be held liable under section 1983 on a theory of *respondeat superior*." Snow ex rel. Snow v. City of Citronelle, Ala., 420 F.3d 1262, 1270-71 (11th Cir. 2005) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978). "To hold the municipality liable, there must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Snow, 420 F.3d at 1271 (quoting Harris, 489 U.S. at 385)

14

Plaintiffs have alleged no policy or custom either officially promulgated or expressed by the actions of official policymakers for the City of Willacoochee. Instead, their complaint against the municipality appears to be based on the actions of Chief Sanchez and Officer McCleod. See Dkt. No. 6 ¶¶ 16–23, 28–30. The complaint makes no allegation that Chief Sanchez, though an Assistant Chief of the Willacoochee Police Department, id. ¶ 16, is a policymaker for the City or one of "those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. 694; cf. Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1347–48 (11th Cir. 2003) (county sheriff was not a county policymaker in a § 1983 action because the county did not exercise sufficient control the sheriff's law enforcement function).

Moreover, proof of a single incident of unconstitutional conduct is not sufficient to prove an unconstitutional policy or custom: in the absence of an official policy, or action by an official policymaker, Plaintiffs would be required to prove a "widespread or longstanding" series or pattern of conduct by the City of Willacoochee. Craig v. Floyd Cnty., Ga., 643 F.3d 1306, 1310–11 (11th Cir. 2011) ("'A single incident would not be so pervasive as to be a custom,' because a custom must be such 'a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it.'" (internal citations omitted) (quoting

15

Grech, 335 F.3d at 1330 n.6; Brown v. City of Ft. Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991)) (alterations adopted) (internal citations omitted))). No such pattern of conduct is alleged here.

Therefore, the Willacoochee Defendants' motion to dismiss, dkt. no. 8, is **GRANTED** as to Plaintiffs' § 1983 claim against the Willacoochee Police Department and Count Two is **DISMISSED** in that respect.

### 2. Willacoochee Assistant Police Chief Sanchez and Officer McCleod

Chief Sanchez and Officer McCleod raise the defense of qualified immunity in their motion to dismiss. Dkt. No. 8 at 17-18. The crux of their qualified immunity argument is that Chief Sanchez and Officer McCleod had "arguable probable case" to seek the disputed arrest warrants. Id. In response, Plaintiffs argue that there is a factual dispute over the issue of probable cause, thereby rendering the matter inappropriate for resolution at this stage. Dkt. No. 16 at 7. Further, Plaintiffs argue that "[t]o invoke qualified immunity at the motion to dismiss stage, the record must clearly show that no constitutional right was violated." Id. This is not so.

Qualified immunity protects government officials performing discretionary functions from suit under § 1983 unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of

16

Auburn, Ala., 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)). This defense "grants officials 'a right not to be subjected to litigation beyond the point at which immunity is asserted.'" Miller v. Palm Beach Cnty. Sheriff's Off., 129 F.4th 1329, 1333 (11th Cir. 2025) (quoting Howe v. City of Enterprise, 861 F.3d 1300, 1302 (11th Cir. 2017)). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019) (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).

In the qualified immunity analysis, Defendants must first demonstrate that they were engaged in a discretionary function. Id. (citations omitted). Here, Plaintiffs do not appear to contest that Chief Sanchez and Officer McCleod were acting within the scope of their discretionary authority when they sought arrest warrants for Plaintiffs. Dkt. No. 16 at 7 (limiting their argument to the existence of probable cause); see Carter, 557 F. App'x at 907 ("This burden is easily met here, as Gore was clearly acting within the scope of his discretionary authority as a police officer by investigating and securing an arrest warrant in response to reported criminal activity."). Because this first step has been satisfied, the burden next shifts to Plaintiffs "to show that the

17

defendant violated a constitutional right *and* that the constitutional right was clearly established at the time of the alleged violation." Carter, 557 F. App'x at 907 (citing Pearson v. Callahan*,* 555 U.S. 223, 236 (2009)).

Count Two of the amended complaint states that the law is clearly established that an officer cannot provide "false or misleading" information to obtain an arrest warrant "when a reasonable officer would have known that the information provided was not supported by probable cause." Dkt. No. 6 ¶ 29. This alleges a violation of Plaintiffs' Fourth Amendment rights via a false statement made by an officer in support of an arrest warrant and, thus, the securing of Plaintiffs' arrest warrants without probable cause.

In Franks v. Delaware, the Supreme Court held that a constitutional violation can occur when an officer makes perjurious or recklessly false statements in support of a warrant. 438 U.S. 154, 155-56, 165-71 (1978). While Franks specifically dealt with a search warrant, id. at 155, the Eleventh Circuit has applied this holding to arrest warrant challenges, as well. See Kelly v. Curtis, 21 F.3d 1544, 1554-55 (11th Cir. 1994) (citations omitted). In this context, a statement is "truthful" if "the information put forth is believed or appropriately accepted by the affiant as true." Franks, 438 U.S. at 165.

18

To determine if there has been a violation of the Fourth Amendment through a misstatement or omission, the Court asks first whether there was an intentional or reckless misstatement or omission made, then, the Court determines whether probable cause would be negated if the offending statement was removed or the omitted information included. Paez, 915 F.3d at 1287. Though the Court must accept the truth of Plaintiffs' allegations at this stage, the Court may properly determine whether probable cause existed in ruling on a motion to dismiss based on the information alleged in the complaint and the warrant affidavit. See, e.g., id. at 1283–84, 1285–88 (finding that probable cause existed so as to support the defendants' qualified immunity defense in reviewing a district court's denial of a motion to dismiss).

We may, for now, assume that Plaintiffs have satisfied the first part of this test by alleging that Chief Sanchez and Officer McCleod made reckless omissions to secure Plaintiffs' arrest warrants regarding (1) the identity of the proper owners of the missing trailers, SLE, (2) the fact that SLE did not wish to prosecute the matter, and (3) the fact that CM paid SLE for the trailers. See Dkt. No. 6 ¶¶ 28–30; Dkt. No. 16 at 7. The amended complaint, however, fails to allege facts sufficient to support the second part of the test: whether probable cause would be negated if the offending statement were removed or the omitted information included. Paez, 915 F.3d at 1287.

19

"Probable cause for an arrest exists when 'at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" United States v. Thomas, 160 F.4th 1177, 1183 (11th Cir. 2025) (quoting Holmes v. Kucynda, 321 F.3d 1069, 1079 (11th Cir. 2003)).

The standard for determining the level of probable cause in the qualified immunity context is even more deferential: "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." Malley v. Briggs, 475 U.S. 335, 344–45 (1986) (internal citations omitted) (citing United States v. Leon, 468 U.S. 897, 923 (1984)). In the case of an alleged omission, if the affidavits—including the omitted information—would have demonstrated "arguable probable cause," the officers are entitled to qualified immunity. Paez, 915 F.3d at 1288. In this setting, "arguable probable cause" exists if a "reasonable officer could have believed an offense was committed." Id. (emphasis in original). Here, if the omitted information had been included, arguable probable cause would still be present.

First, even if SLE were the actual owner of the trailers when the trailers were taken from Freedom Trailers, the fact that Freedom Trailers was in lawful possession of the trailers when the

20

trailers were taken is enough to make the trailers the "property" of Freedom Trailers for purposes of Georgia's theft by taking statute. See Willingham v. State, 418 S.E.2d 25, 27 (Ga. 1992) (stating with approval the principles that "lawful possession of property is sufficient, for the purposes of the theft statute, to make the property in question the property of the victim; and that a thief cannot question the title of an apparent owner"); Norton v. State, 36 S.E.2d 120, 120 (Ga. Ct. App. 1945) ("Those who enter a place of business 'and steal therefrom an article will not be permitted to raise nice and delicate questions as to the title of the article stolen.'" (alterations adopted) (quoting Thomas v. State, 54 S.E. 182 (Ga. 1906))).

For example, in Wells v. State, an indictment charged that cars stolen from a dealership were legally the property of the dealership. 486 S.E.2d 390, 392 (Ga. Ct. App. 1997). On appeal, however, the appellant presented evidence showing that the cars were the property of the manufacturer. Id. This difference was not fatal to the indictment because "those who steal will not be permitted to raise nice and delicate questions as to the title of that which is stolen. The ownership of personal property in an indictment for larceny, may be laid in a bailee having possession of the property when it was stolen...." Id. (quoting McIlhenny v. State, 323 S.E.2d 280, 281 (Ga. Ct. App. 1984)).

Like the dealership in Wells, the complaint shows that Freedom Trailers was in the business of selling or distributing trailers, as evidenced by both CM and SLE's purchase of trailers from Freedom Trailers. Dkt. No. 6 ¶¶ 13-15. Therefore, even if SLE were the "true owner" of the trailers, Freedom Trailers can still be considered a victim of Georgia's theft by taking statute, O.C.G.A. § 16-8-2, as long as Freedom Trailers lawfully possessed the taken trailers. There is no indication in the amended complaint that Freedom Trailers was not in lawful possession of the trailers when they were taken. Consequently, the warrant does not misstate the alleged victim, and even if SLE had been listed as the true owner of the trailers, such a change would not defeat probable cause.

Further, the arguable probable cause determination would not be undercut by the fact that SLE was a victim and that SLE would eventually receive compensation for the trailers. See Par. v. State, 342 S.E.2d 360, 362 (Ga. Ct. App. 1986) ("As is the case in a charge of larceny, the question of whether the owner of the property suffered loss or recovered the property or was afforded restitution is irrelevant to the guilt or innocence of the perpetrator."). Per O.C.G.A. Section 16-8-2:

> A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated.

In other words, the crime of theft by taking is committed at the moment the property is wrongfully taken—it is not material to the probable cause determination that the property was paid for later. As such, even if the warrant application noted that the trailers were later paid for with funds sent by CM to SLE, arguable probable cause would not be defeated.

Even if the omissions had been added to the affidavit in support of the warrant, the facts as alleged therein would support at least arguable probable cause for the issuance of Plaintiffs' arrest warrants. Both affidavits sworn in support of each Plaintiff's arrest warrant, attached to the Willacoochee Defendants' motion to dismiss, state that each Plaintiff

> did willingly and knowingly [] take two white (cargo trailers vin #5WKBE2622P1078695, vin # 5WKBE2023P1078696), with a value of $16,076, property of (Freedom Cargo Trailers) with the intention of depriving said owner of said property[] between the dates of 07/31/2022 at 04:00 PM and 08/12/2022 at 10:26 AM, in Atkinson County, Georgia; the place of occurrence of said offense being 774 WEST MARSHALL AVENUE WILLACOOCHEE GA 31650 and against the laws of the State of Georgia.

Dkt. No. 8-1 at 1-2.[2] These statements are not contradicted by Plaintiffs' version of events set forth in the amended complaint.

---

[2] Under the incorporation by reference doctrine, the Court may consider documents attached to the motion to dismiss if they are "referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." Hi-Tech Pharms., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018) (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997)). The arrest warrants attached to the Willacoochee Defendants'

See Dkt. No. 6 ¶ 15 (alleging that Plaintiff Coley was seen loading the missing trailers); id. ¶¶ 21, 28 (alleging that a different entity from CM was the "actual owner" of the trailers).

The only factual dispute raised by Plaintiffs relates to the issue of intent. Dkt. No. 16 at 7 (arguing that "prosecution proceeded despite a lack of criminal intent and contrary statements from SLE"). Disputes about intent, however, are no bar to a finding of arguable probable cause. Cf. United States v. Everett, 719 F.2d 1119, 1120 (11th Cir. 1983) (finding in the context of counterfeit that "[w]hile intent is an element of the crime which must be proved at trial, it is not necessary in order to establish probable cause to arrest").

Additionally, the letter SLE sent to CM purportedly resolving the dispute and stating that SLE was not pursuing charges was dated August 22, 2022, three days *after* the warrants were issued. Dkt.

---

motion to dismiss, dkt. no. 8-1, are referenced in the complaint. See, e.g., Dkt. No. 6 ¶ 23 ("The relevant warrants are Warrant No. 22-268FW for George J. Coley and 22-267FW for Mackenzie Calgary."). The warrants are central to Plaintiffs' claims. Id. ¶¶ 28–30 (basing Count Two on allegedly misleading statements made to the magistrate judge in pursuit of the arrest warrants). Finally, Plaintiffs do not dispute the authenticity of the warrants in their response to Defendants' motion to dismiss. Dkt. No. 16; Horsley, 304 F.3d at 1134. ("'Undisputed' in this context means that the authenticity of the document is not challenged."). Therefore, the Court properly considers the content of the warrants at this stage.

No. 6 ¶¶ 21, 23. Therefore, Officer McCleod could not have included that information in her warrant affidavit.

Based on the information alleged in the amended complaint, Officer McCleod had at least arguable probable cause to believe that Plaintiffs had committed the offense of theft by taking: As alleged in the amended complaint Plaintiff Coley, Plaintiff MacKenzie's employee, had been seen taking the missing trailers which did not belong to CM, and the alleged victim, Freedom Trailers, reported to officers that "a mistake could not have been made" in identifying the correct trailers to load, allowing the conclusion that a crime had occurred. Dkt. No. 6 ¶¶ 13, 15, 19, 22. Thus, the facts as alleged in the amended complaint and reported in the affidavits would "warrant a prudent man in believing that the suspect had committed or was committing an offense," establishing, at least, arguable probable cause. Thomas, 160 F.4th at 1183 (quoting Holmes, 321 F.3d at 1079). Because nothing in the amended complaint negates arguable probable cause, Defendants Officer McCleod and Chief Sanchez are entitled to qualified immunity on Plaintiffs' Fourth Amendment claim as pleaded in Count Two.

Therefore, the Willacoochee Defendants' motion to dismiss, dkt. no. 8, is **GRANTED** as to Plaintiffs' § 1983 claim against Chief Sanchez and Officer McCleod, and Count Two is **DISMISSED**.

25

## II.  Plaintiffs' State Law Claims

Because the Court has dismissed the federal claims in Counts One and Two, the only causes of action remaining are state law claims. Dkt. No. 6 ¶¶ 31–33 (Violation of the Georgia Constitution, Count Three); id. ¶ 34 (State Law False Arrest, Count Four); id. ¶¶ 35–37 (State Law Malicious Prosecution, Count Five). Under 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction over a claim when it has "dismissed all claims over which it has original jurisdiction." In determining whether to exercise jurisdiction under § 1367(c), the Court considers factors including "judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together." Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725–26 (1966)).

Considering these factors, the Court declines to exercise jurisdiction over Plaintiffs' state law claims. This decision is mindful of federal judicial resources and recognizes that "notions of fairness and comity would suggest that a case now composed of claims based entirely on state law should be tried in a state court." Power Equip. Maint., Inc. v. AIRCO Power Servs., Inc., 953 F. Supp. 2d 1290, 1298 (S.D. Ga. 2013); see also Gibbs, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by

26

procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well" (citations omitted)).

Therefore, Counts Three, Four, and Five, Dkt. No. 6 ¶¶ 31-37, are **DISMISSED.**

### CONCLUSION

For the reasons set forth in this Order, Defendants' motions to dismiss, dkt. nos. 8, 14, are **GRANTED** as to Counts One and Two. Therefore, Counts One and Two of Plaintiffs' amended complaint, dkt. no. 6 ¶¶ 26-30, are **DISMISSED with prejudice**, and because the Court declines to exercise supplemental jurisdiction over the remaining claims, Counts Three, Four, and Five, id. ¶¶ 31-37, are **DISMISSED without prejudice.**[3] The motion hearing scheduled for April 24, 2026 is canceled. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 15th day of April, 2026.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGI

---

[3] "Where the district court declines to exercise supplemental jurisdiction over state claims in a case originally filed in federal court, the state claims should be dismissed without prejudice so that they may be refiled in the appropriate state court." McDuffie v. Broward Cnty., Fla., 654 F. App'x 408, 411 (11th Cir. 2016) (citing Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir. 1999)).